MRS. MARY HEARD *v.* MRS. ELMER C. COTTRELL.

[56 South. 277.]

1. CHANCELLOR. *Findings. Guardian and ward. Appointment.*

The decree of a chancellor on the facts will not be disturbed by the supreme court unless it is plainly and manifestly wrong.

2. GUARDIAN AND WARD. *Appointment of guardian.*

Other things being equal and the mother being dead, the father's clearly expressed wish as to who should be guardian of his minor child should be respected by the courts.

APPEAL from the chancery court of Clay county.
HON. J. Q. ROBBINS, Chancellor.

Contest between Mrs. Mary Heard and Mrs. Elmer C. Cottrell for the guardianship of a minor. From a decree appointing Mrs. Cottrell guardian, Mrs. Heard appeals.

The facts are as follows:

Julian W. Jameson died intestate on the 6th of November, 1908, leaving one child, John C. Jameson, at that time about four years of age. The mother of the child died when it was about one year of age. The appellee, Mrs. Elma C. Cottrell, is the sister of the child's mother. The appellant, Mrs. Mary Heard, is the sister of the child's father. On the 11th day of March, 1909, the appellant Mrs. Mary Heard, filed a petition asking that she be appointed guardian of the person of the child. On March 25, 1909, before any order had been entered on the petition of appellant, the appellee, Mrs. Elma C. Cottrell, also filed a petition asking to be appointed guardian of the person of the child. At the time of his death, and for some time prior thereto, Julian W. Jameson, with his child lived with the appellee and her husband in the city of West Point. The appellant lived in the country, some miles from West Point. There was evidence in behalf of each of the contestants that they were fit and proper persons to have the care and custody of the child. It was shown at the hearing that, just before he died, Julian W. Jameson, responding to a question as to what disposition he wished made·of the child in the event of his death, stated that he desired his sister, the appellant, to have him. It was contended by the appellant, and there was evidence to support the contention, that at the time he made the statement his mental condition was good. It was contended by the appellee, and there was evidence to support the contention, that at the time he made the statement he was so weakened by disease and his mental faculties were so beclouded that he was not in a condition to dispose of the child.

*A. F. Fox,* for appellant.

Before reviewing the testimony we would like to say that we bottom our argument on two propositions, first, that in the appointment of a guardian, the interest of the minor is the paramount consideration, and second, that other things being equal, the dying wishes of the deceased parent will "turn the scales in favor of the person so designated." And in this case, had the chancellor been satisfied that Julian was sound in mind when he was asked the momentous question, his decree would have been different, doubtless. We say further that the highest welfare of the child and the expressed wishes of its father both demand the appointment of appellant as guardian. 21 Cyclopedia of Law, p. 33, and cases cited.

*Critz, Kimbrough & Critz,* for appellee.

The wishes of the parent when freely and intelligently expressed as to the disposition of the child are not conclusive upon the court.

"It is a well-settled rule of law that in the appointment of a guardian the interest of the minor is the paramount consideration, and this means not the provisional benefit, but the lasting good. The court will take into consideration not merely temporary welfare but the state of the minor's affections, attachments, his training, education and morals. Indeed, under this rule, a court may overrule even the prior claim of a surviving parent and certainly the expressed wishes of a deceased parent. Nevertheless, the dying wishes and earnest requests of the deceased parents of an infant will be considered by the court in appointing a guardian, and, other things being equal, will turn the scales in favor of the person so designated." 21 Cyc., pp. 32-33.

"The choice of the person to be appointed as guardian is peculiarly a matter for the discretion of the appoint-

ing court; and the exercise of this discretion will not be reviewed on appeal except for manifest legal errors.''

The wishes of the deceased parents of an orphan child will have careful consideration but will not be conclusive upon the court.    15 Am. & Eng. Ency. Law (2d Ed.), p. 38.

The chancellor, with all the witnesses and parties and proof before him, exercised his sound discretion as to what was the best interest of the child; and if it be the law that this discretion will not be disturbed except for ''manifest legal errors,'' we can't possibly find any semblance of ground for this court's interference.

The chancellor had a right, in the exercise of his discretion, to override the express wishes of the father as to the disposition of the child, even if such wishes had been freely and earnestly and intelligently expressed, if the chancellor believed from all the evidence and circumstances of the case and of the parties that it was for the best interest of the child to place him in the custody of another person; and this exercise of discretion on his part should not be disturbed unless there is shown to be ''manifest legal error'' in his action.

''The welfare of the infant is the primary consideration to which all others yield.'' 15 Am. & Eng. Ency. L. (2d Ed.), pp. 25, 38, and note 2; *Desribes* v. *Wilmer,* 44 Am. Rep. 503; same case, 69 Ala. 25; 21 Cyc. pp. 32-33.

And the chancellor is the best judge of the welfare of the infant in question.

No appointment of a guardian by the parent and no disposition of the child by the parent is conclusive upon the court except the appointment by will, as provided in sections 2401 and 2402 of the Code of 1906. This testamentary appointment must conform to all the solemnity and formality of an ordinary will, and the person so making such appointment must have the same testamentary

capacity that is required for the execution of an ordinary
will.

The appointment must be by "an instrument wholly
written and signed by him or her, or attested by some
one or more creditable witnesses, if not so written."
Code section 2401.

"The guardian so appointed shall, before he exercises
any authority over the minor or his estate, appear before
the chancery court and declare, in writing, his accept-
ance of the guardianship, exhibiting and filing therewith
instrument of appointment, which shall be recorded with
the acceptance in Record of Wills, and the validity of the
instrument may be contested like that of the will, and
he shall qualify according to law." Code section 2402.

WHITFIELD, C.

This case has had our most careful and thorough ex-
amination. If the dying request of the father as to the
custody of his child, a boy about six years of age, were
taken from the record, we should affirm the decree. But
the record shows clearly that the father on his deathbed
distinctly stated that he wished the appellant to have
the custody of his child. There is no dispute that such
wish was distinctly expressed by the father. The con-
troversy is as to whether the father, who died of pneu-
monia, was rational and competent to make a disposition
of his child at the time it was made.

We know no useful purpose that could be subserved by
setting out in detail, the testimony on one side and the
other on this point. Recognizing fully the rule that the
decree of a chancellor, especially the decree of an un-
usually able chancellor, on the facts, should not be dis-
turbed by this court, except where it is plainly and man-
ifestly wrong, we are constrained to hold that the con-
clusion which the chancellor must have reached in order
to render the decree he pronounced in this case, to-wit,
that at the time the father expressed his wish as to the

custody of his child he was not competent to make such disposition, was clearly and manifestly wrong. We think the testimony overwhelmingly establishes, properly weighed and analyzed, that the father was perfectly rational at the time he made this disposition and thoroughly understood what he was doing. It is not like the case of a testator suddenly stricken down and called unexpectedly to dispose of large property interests by his will. Such testator would be required suddenly to recall all the property he owned, to determine as to who should be the beneficiaries of his will, what estates or interests he would devise to each, to provide for debts, to choose executors, etc. The whole matter would be one, for the first time present to his mind, requiring a first great effort of the mind to meet the exigencies of the whole situation.

Nothing of that sort was true here. This father knew both aunts and the families of both, their financial ability, and their suitableness from every point of view. The child has been with both at different times, and both have been as kind to it as possible. What influenced him in making the choice we do not know, nor is it material to inquire. It is enough that, all other things being equal, the law is that the father's clearly expressed wish ought to turn the scales. We think that principle of law controls this case, there being nothing to show that the best interests of the child are in conflict with the wish of the father.                                              *Reversed.*

*Suggestion of error filed and overruled.*

PER CURIAM.

The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree of the court below is reversed, and a final decree will be entered here, awarding the custody of the child to appellant.